12-2010-cr
United States v. Moran-Toala

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: June 20, 2013          Decided: August 12, 2013)

Docket No. 12-2010-cr

--------------------------------------

UNITED STATES OF AMERICA,

Appellee,

- v -

ELIZABETH MORAN-TOALA,

Defendant-Appellant.

--------------------------------------

Before:  CALABRESI, CABRANES, and SACK, Circuit Judges.

Appeal from a May 10, 2012 judgment of the United States District Court for the Eastern District of New York (Frederic Block, Judge), after a jury trial, convicting Elizabeth Moran-Toala of conspiracy to exceed authorized access to a government computer in furtherance of a narcotics conspiracy in violation of 18 U.S.C. §§ 371 and 1030(c)(2)(B)(ii).  The jury acquitted her of narcotics conspiracy charges, however, after the district court instructed the jury in effect that it was permitted to return inconsistent verdicts.  We conclude that this

instruction was erroneous and that the error was not harmless.

Vacated and remanded.

PATRICIA E. NOTOPOULOS (Jo Ann M. Navickas, on the brief), Assistant United States Attorneys, for Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

FLORIAN MIEDEL, Law Office of Florian Miedel, New York, NY, for Defendant-Appellant.

SACK, Circuit Judge:

Although juries are supposed to render verdicts that are consistent with one another, from time to time they do not. When this happens, it is well established that a criminal defendant cannot exploit any such inconsistency in the jury's verdicts to secure a new trial. This appeal presents not a direct challenge to inconsistent verdicts, but instead a related question: whether the district court erred when it instructed the jury in effect that it was permissible to render inconsistent verdicts, and whether, in light of that instruction, the jury verdicts and judgment based thereon can stand.[1]

---

[1] The government concedes (and we agree) that in light of the fact that the jury acquitted the defendant of one of the conspiracy charges, no matter how that acquittal was affected by the court's supplemental instruction, the judgment of acquittal on that charge cannot be appealed

## BACKGROUND

From February 2003 to October 2007, Defendant Moran-Toala was employed as a Federal Customs and Border Patrol ("CBP") officer at Hollywood International Airport in Fort Lauderdale, Florida. She worked in a "Passenger Analytical Unit," which required her to review flight manifests to identify airline passengers who were suspected of involvement in criminal activity. In order to do so, Moran-Toala cross-checked names in a database known as the Treasury Enforcement Communications System ("TECS"), which collects information from thousands of databases, including those containing flight and travel information, border crossings, reports of seizures of contraband, criminal history information, outstanding warrants, and motor vehicle records. CBP officers are prohibited from "browsing" the TECS database for personal reasons or for information otherwise unrelated to official business, and they must complete various privacy awareness training courses in order to understand these obligations.

---

because, under protections afforded to the defendant by the Double Jeopardy Clause of the Fifth Amendment, the charge could not in any event be pursued by the government on remand. See U.S. CONST. amd. V.

<u>The Eastern District of New York Conspiracy</u>

In 2005, Immigration and Customs Enforcement agents began investigating a suspected narcotics conspiracy involving Jorge Espinal, a Delta Airlines baggage handler at New York's John F. Kennedy Airport. Law enforcement agents obtained a judicially-authorized wiretap on Espinal's phone, which disclosed that Espinal was working with a New York-based narcotics distributor named Henry Polanco. Espinal told Polanco that because he was a luggage-ramp supervisor, he could intercept shipments of narcotics from Delta planes arriving at the airport, and that such shipments would not be screened on arrival by CBP agents. Polanco arranged for a supplier in the Dominican Republic to hide packages containing cocaine, heroin, and ecstasy on many Delta flights that traveled directly from Santiago, in the Dominican Republic, to New York. CBP agents ultimately seized six of Polanco and Espinal's shipments, two of which are pertinent to Moran-Toala's case.

First, Espinal and Polanco arranged for a backpack containing heroin and cocaine to be stashed on a February 11, 2006 Delta flight from the Dominican Republic to New York. CBP agents seized the backpack before Espinal could retrieve it. Espinal did not immediately realize that the shipment had been intercepted. He told Polanco, wrongly as

4

it turned out, that the bag had been placed on the international baggage carousel, and then in unclaimed baggage, but that he, Espinal, was trying to get it back.

The Dominican supplier became concerned about Espinal's failure to retrieve the backpack, suspecting that Espinal and Polanco had stolen the drugs.  The supplier demanded that Espinal and Polanco return the shipment or pay him for the loss.  To prove to the Dominican supplier that they had not stolen the drugs, Espinal said that "his girlfriend worked for the government and that she had access to [seizure of contraband] information," so "he was going to tell her to get the information of the seizure to prove . . . that the seizure was real."  Trial Transcript ("Trial Tr.") at 248:17-249:5; Joint App'x at 329-30.  On February 14, 2006, three days after the shipment went missing, Moran-Toala used TECS to access the seizure report for the backpack in question.

Second, as a result of a wiretap, law enforcement agents knew that Espinal and Polanco had arranged for a "mule"[2] named Henry Cabrera to carry a suitcase containing narcotics on an August 24, 2007 Delta flight from the

[2]  "In the quaint jargon of the narcotic trade, individuals who smuggle narcotics on their persons are known as 'mules.'"  United States v. Vivero, 413 F.2d 971, 972 n.1 (2d Cir. 1969) (per curiam).

Dominican Republic to JFK Airport. The agents planned to arrest Cabrera as he exited the plane. While they were waiting for the flight to arrive, they saw Espinal attempt to enter a sterile area, apparently to meet Cabrera and take the suitcase before Cabrera reached customs screening. Espinal reported to Polanco that the heavy law enforcement presence prevented him from meeting Cabrera and that he did not know what happened to the suitcase, but Polanco suspected that Espinal had stolen the drugs. Again, Espinal said that he would contact his girlfriend to confirm that Cabrera had been arrested as he deplaned, as proof that the drugs were seized by law enforcement, and not stolen.

On August 29, 2007, Moran-Toala again used TECS to access Cabrera's arrest report. According to her telephone records, on the morning of August 30, 2007, Moran-Toala placed a telephone call to the phone located at Espinal's work station at JFK Airport.

In addition, Espinal had an associate named Victor Perez who smuggled money to the Dominican Republic at Espinal's behest. Perez was planning to fly to the Dominican Republic for that purpose, but was afraid that there might be an unrelated outstanding warrant for his arrest issued as a result of his failure to pay child support, which might pose a problem for him during reentry

6

into the United States. On or about August 29, 2007, Espinal told Perez that he had a "lady friend" who could check to see whether Perez had any outstanding warrants. Trial Tr. at 486:18; Joint App'x at 566. Perez gave Espinal his date of birth and social security number. On September 1, 2007, Moran-Toala conducted a TECS search using Perez's personal information. The search did not unearth any outstanding warrants or criminal history information. Moran-Toala's phone records reflect two outgoing calls to Espinal on that day. A few days later, Espinal told Perez that it was safe for him to travel.

Moran-Toala was indicted in the United States District Court for the Eastern District of New York on February 19, 2008, in connection with these events. In a superseding indictment filed on April 2, 2009, she was charged, in Count One, with conspiracy to import more than one kilogram of heroin and more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 960, 963; and, in Count Two, with conspiracy to use a government computer unlawfully, in violation of 18 U.S.C. §§ 1030(a)(2)(B), 1030(c)(2)(B)(ii). Unlawful use of a computer is a misdemeanor offense, but is subject to a felony enhancement if "the offense was committed in furtherance of any criminal

7

or tortious act in violation of the Constitution or laws of the United States."  18 U.S.C. § 1030(c)(2)(B)(ii).

### The Southern District of Florida Conspiracy

While the New York conspiracy case was pending, Moran-Toala was indicted in the Southern District of Florida for her alleged involvement in a separate heroin importation and distribution conspiracy with her sister and brother-in-law, officers of the CBP and Transportation Security Administration, respectively.  On April 16, 2010, she pleaded guilty to the Florida narcotics conspiracy charges.  In her signed, written plea allocution, Moran-Toala admitted that she used the TECS system to run travel checks for drug couriers flying out of Fort Lauderdale to help ensure safe delivery of the drugs.  She also admitted that when a shipment of narcotics was seized in April 2007, she used TECS to access the seizure report to prove to her supplier that the product was seized and not stolen.  Moran-Toala was sentenced to a term of 120 months' imprisonment for the Florida conspiracy.

### Trial in the Eastern District of New York

Back in the Eastern District of New York, on June 21, 2011, Moran-Toala proceeded to trial before a jury on both counts of the superseding indictment.  She admitted to misusing her CBP computer, but asserted that she did so with

8

no knowledge of Espinal and Polanco's criminal purpose, let alone any intent to further it.

### Rule 404(b) Evidence

During trial, the government moved under Rule 404(b) of the Federal Rules of Evidence to admit Moran-Toala's Florida plea allocution as evidence of her knowledge of the New York narcotics conspiracy. Although the defense conceded that the plea allocution fell within the ambit of Rule 404(b), it objected to the admission of this evidence on Rule 403[3] prejudice grounds. The district court initially hesitated, noting that if the plea allocution came in, "[i]t wouldn't take more than ten seconds [for the jury] to find her guilty." Trial Tr. at 293:9-10; Joint App'x at 374. Ultimately, however, the district court decided to allow the evidence to be admitted, noting that "knowledge and scheme and intent [are] very much at play." Trial Tr. at 515:24; Joint App'x at 595. Over the defense's objection

---

[3] Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (emphasis added).

and after heavy editing by the court, the government was allowed to present the following stipulation to the jury:

> [I]t is agreed among the parties that as part of the statement under oath during a guilty plea in a different case on April 16th, 2010, before the Honorable James I. Cohen, United States District Judge, Southern District of Florida, the defendant admitted the following.
>
> In furtherance of a drug conspiracy that began in approximately June 2006, between herself, her sister Cindy Moran, and a third individual, [a defendant in the Florida case,] Elizabeth Moran-Toala misused her work computer and ran the names of people she knew entering the United States from the Dominican Republic carrying narcotics. Elizabeth Moran-Toala scrolled down the manifest in order to avoid detection, rather than simply entering the courier's name.
>
> [T]he purpose of those inquiries [was] to ensure the couriers . . . would not encounter[] any difficult[ies] at Customs[.] [F]or her part in this conspiracy, Elizabeth Moran-Toala was paid $10,000.

Trial Tr. at 534:13-535:4; Joint App'x at 614-15. When the prosecutor had finished reading the stipulation into the record, the district court immediately gave the jury a strongly worded limiting instruction, emphasizing that they could consider the stipulation only for the purpose of determining whether Moran-Toala knew that she was misusing the computer to further a crime -- the narcotics conspiracy

10

-- and not as evidence that she has a "propensity to commit crimes." Trial Tr. at 535:16; Joint App'x at 615.

### The Jury Charge and Verdict Sheet

In its charge as to the law with respect to the felony enhancement for the unlawful computer use conspiracy, the district court instructed the jury:

> If you determine, in respect to count two [conspiracy to exceed authorized computer access], that the defendant is guilty of that count, you must determine whether the government has proved beyond a reasonable doubt that Section [1030(a)(2)(B)(ii)] -- that the offense in that section was committed in furtherance of a criminal act in violation of the Constitution and laws of the United States; namely, the conspiracy to import narcotics as charged in count one. It's linked to count one if you find she is guilty.
>
> The phrase in furtherance means with the intent to help, advance, move forward, promote or facilitate. The government must therefore show that the defendant engaged in the conduct of accessing the United States Department of Homeland Security computer in excess of authorization, with the intent to advance, move forward, promote or facilitate the conspiracy charged in count [one] about which I've already instructed you.

Trial Tr. at 665:10-25; Joint App'x at 745. Neither party objected to this instruction.

The district court provided the jury with a verdict sheet containing various questions. Question 1

asked the jury to report its verdict on Count One, the narcotics conspiracy count. Question 2 asked the jury to find the amounts of heroin and cocaine involved in the narcotics conspiracy, if any. Question 3 asked the jury to report its verdict on Count Two, for conspiracy to exceed authorized computer access. Question 4 asked, "Was the [unlawful computer use] conspiracy in furtherance of the crime charged in Count One, namely, the conspiracy to import a controlled substance?" If the jury answered Question 4 affirmatively, Moran-Toala would be subject to a felony enhancement on Count Two, for conspiring to unlawfully use a computer.

Jury Deliberations

At approximately 4:15 p.m. on June 28, 2011, the first full day of deliberations, the jury sent back a note asking "Count 2: must the verdict in #4 be in agreement with Count #1?" Jury Note, June 28, 2011; Joint App'x at 799. In other words, the jury was asking whether the findings on which it based its response to Question 4 on the verdict sheet (i.e., did Moran-Toala participate in a conspiracy to unlawfully use a computer in furtherance of the crime charged in Count One, conspiracy to import a controlled substance) had to be consistent with its verdict on Count One itself. The district court shared the contents of the

12

note with counsel and solicited their respective views. The government argued that the answer should be "no." In the government's view, Moran-Toala could have intended to exceed her authorized computer access in furtherance of the narcotics conspiracy without agreeing to join it or without having enough knowledge of the narcotics conspiracy to be deemed a member. Defense counsel urged the district court to answer the jury's question affirmatively, foreclosing any possibility of inconsistent verdicts.

Although the district court's "gut feeling" was to agree with the defense that the verdicts must be consistent, Trial Tr. at 697:20; Joint App'x at 777, the court ultimately told the jury that its verdict on the narcotics conspiracy and the felony enhancement did not have to be "in agreement," Trial Tr. at 700:3-4; Joint App'x at 780. The court explained its change of heart as a reluctance "to charge the government out of court." Trial Tr. at 700:16-17; Joint App'x at 780.

Approximately twenty minutes after the district court responded to the jury's note, at 5:02 p.m., the jury returned its verdict. Consistent with the district court's supplemental instruction, the jury acquitted Moran-Toala of the narcotics conspiracy, but convicted her of conspiring to

13

unlawfully access a computer in furtherance of the same narcotics conspiracy.

Rule 33 Motion

Following trial, Moran-Toala moved to set aside the jury's findings with respect to the felony enhancement pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In a memorandum and order dated March 8, 2012, the district court denied Moran-Toala's Rule 33 motion. The court began by noting:

> While there may be scenarios in which an individual can act in furtherance of a conspiracy without joining the conspiracy, there is no view of the evidence in this particular case that would permit that conclusion. The government's theory at trial was that Moran-Toala would, at a co-conspirator's request, periodically access confidential information regarding narcotics seizures and other information and pass it on to the coconspirator. . . . By finding that Moran-Toala committed the conspiracy computer offense "in furtherance of the crime charged in Count one," the jury necessarily determined that she had agreed with another -- her co-conspirator on the computer charge -- to commit the crime; that she had intentionally advanced the narcotics conspiracy; and that she had committed an overt act in furtherance of the conspiracy. Put simply, Moran-Toala could not have intentionally misused her computer to advance a narcotics conspiracy without being a member of that conspiracy. Thus, when the jury asked whether the special verdict on the [felony] enhancement needed to be "in agreement" with its

14

> verdict on count one, it was effectively asking whether the verdict had to be consistent.

United States v. Moran-Toala, No. 08 Cr. 103, 2012 WL 748612, at *3, 2012 U.S. Dist. LEXIS 30893, at *7-*8 (E.D.N.Y. Mar. 8, 2012) (footnote omitted).  Nevertheless, the district court rejected the Rule 33 motion because "even assuming that the Court erroneously sanctioned an inconsistent verdict, that error would not alter the general rule that such verdicts are unreviewable."  Id., 2012 WL 748612, at *4, 2012 U.S. Dist. LEXIS 30893, at *9.

On May 4, 2012, the district court sentenced Moran-Toala, principally, to a term of 12 months' imprisonment, to run concurrently with the 10-year sentence she is serving for the Florida narcotics conspiracy conviction.  Moran-Toala now challenges the supplemental instruction regarding the jury's power to render inconsistent verdicts, as well as the admission of the Florida plea allocution, seeking a new trial on the unlawful computer access conspiracy charge.

## DISCUSSION

We note at the outset that because the jury, rightly or wrongly, consistently or inconsistently, acquitted the defendant on Count One, the narcotics conspiracy count, the Double Jeopardy Clause bars any

15

retrial of the defendant for that offense. See Evans v. Michigan, -- U.S. --, 133 S. Ct. 1069, 1074 (2013) ("It has been half a century since we first recognized that the Double Jeopardy Clause bars retrial following a court-decreed acquittal . . . ."). This appeal is therefore limited to the defendant's conviction on Count Two: the misdemeanor conspiracy to exceed authorized computer access count, and its accompanying felony enhancement, which applies only if the unlawful computer-use conspiracy was committed in furtherance of the narcotics conspiracy charged in Count One.

### I. The Supplemental Jury Instruction

As we previously noted, whether the jury rendered inconsistent verdicts is not, in and of itself, the basis for this appeal. On the face of it, it does seem hopeless to try to reconcile the jury's acquittal as to the defendant's participation in the Espinal-Polanco narcotics conspiracy charged in Count One with the jury's conviction as to Count Two, the defendant's participation in a conspiracy to access TECS with the intent to further the Espinal-Polanco narcotics conspiracy.[4] But Moran-Toala does

_____

[4] By ultimately convicting Moran-Toala of the unlawful computer access conspiracy, the jury determined that: she agreed with Espinal to gain access to TECS, she committed an overt act in furtherance of the conspiracy, and she did so

16

not directly challenge, nor could we review, the verdict for inconsistency.  It has long been the law that "[c]onsistency in the verdict is not necessary."  <u>Dunn v. United States</u>, 284 U.S. 390, 393 (1932).  "[T]he jury, though presumed to follow the instructions of the trial court, may make its ultimate decisions 'for impermissible reasons,' such as 'mistake, compromise, or lenity.'"  <u>United States v. Acosta</u>, 17 F.3d 538, 545 (2d Cir. 1994) (quoting <u>United States v. Powell</u>, 469 U.S. 57, 63, 65 (1984)).  Inconsistent verdicts are unreviewable on appeal, even though "'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred," because "the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest."  <u>Powell</u>, 469 U.S. at 65.

But it does not follow from judicial inability to disturb inconsistent verdicts after the fact that the district court may sanction potentially inconsistent verdicts <u>ex</u> <u>ante</u>.  It is on that basis that Moran-Toala

with the intent to advance the narcotics conspiracy.  It is difficult to see how these findings would not compel the jury also to find that Moran-Toala agreed with Espinal to import narcotics and that she misused used her CBP computer to further that narcotics conspiracy.

17

challenges the supplemental jury instruction: the court's single-word answer "No" to the note from the jury, which, she argues, wrongly gave the jury explicit permission to return inconsistent verdicts, at its discretion.

A.   The District Court's Supplemental Jury Instruction was Erroneous

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." United States v. Al Kassar, 660 F.3d 108, 126 (2d Cir. 2011) (alterations and internal quotation marks omitted).  Here, the court initially explained to the jury that its verdict on the narcotics conspiracy count should be "linked" to its findings with respect to the felony enhancement because Moran-Toala could be subject to the felony enhancement only if the government proved that she unlawfully used her CBP computer with the intent to further the narcotics conspiracy.  This instruction reflected the considerable overlap in the legal elements of the two conspiracy charges, and the facts applicable to each.  The jury clearly recognized the tension between a potential verdict acquitting Moran-Toala of participating in a narcotics conspiracy while finding that she agreed with another to misuse her CBP computer with the intent to further that

18

narcotics conspiracy, or vice versa. We can think of no other coherent reason for the jury to send a note seeking judicial guidance, a note that we understand to be tantamount to a request for permission to unlink its verdicts by ignoring the intent requirement in the felony enhancement charge or by disregarding the majority of the narcotics conspiracy charge. The district court, in response, blessed the jury's clear desire to render verdicts it considered inconsistent, or not "in agreement," with the law and the evidence.

Inconsistent verdicts are often characterized as a form of jury nullification. "Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court -- in the words of the standard oath administered to jurors in the federal courts, to render a true verdict <u>according to the law and the evidence</u>." <u>United States v. Thomas</u>, 116 F.3d 606, 614 (2d Cir. 1997) (internal quotation marks omitted; emphasis in original). The case before us does not arise from jury nullification -- the jury followed the court's instruction that an inconsistent verdict was permissible. The jury's act would have been one of nullification had the district court answered "yes" to the jury's question as to whether inconsistent verdicts were prohibited and the jury

19

nevertheless returned the same verdict.  But irrespective of the jury's ultimate decision, the supplemental instruction cleared the way for the jury to return verdicts the jurors themselves could not reconcile in light of the court's charge of law and the evidence presented.

In Thomas, "[w]e categorically reject[ed] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."  Id. at 614.  It plainly follows, as we have concluded, that there is no error in a district court's refusal to give a jury a charge that informs them of their right or ability to nullify.  See United States v. Edwards, 101 F.3d 17, 19 (2d Cir. 1996) (per curiam).  Nor have we faulted a district court for instructing a jury that it has a "duty" to convict if the government proves a defendant's guilt beyond a reasonable doubt.  United States v. Carr, 424 F.3d 213, 219-20 (2d Cir. 2005) ("Nothing in our case law begins to suggest that the court cannot also tell the jury affirmatively that it has a duty to follow the law, even though it may in fact have the power not to.").  Thus "the power of juries to 'nullify' or exercise a power of lenity is just that -- a power; it is by no means a right." Thomas, 116 F.3d at 615.

20

We conclude that, in its very brief and extemporaneous late-afternoon response to the jury's question regarding a possible inconsistent verdict on the narcotics conspiracy count and the felony enhancement, the district court was effectively inviting them so to rule, contrary to law.  Such an "explicit instruction . . . conveys an implied approval that runs the risk of degrading the legal structure . . . ." United States v. Dougherty, 473 F.2d 1113, 1137 (D.C. Cir. 1972).  Thus, the district court's instruction misled the jury as to its duty to follow the law.

B.  Nature of the Error

        1.  Structural Error.  "The Supreme Court has distinguished two kinds of errors that can occur at, or in relation to, a criminal proceeding: so-called 'trial errors,' which are of relatively limited scope and which are subject to harmless error review, and 'structural defects,' which require reversal of an appealed conviction because they 'affect[] the framework within which the trial proceeds.'" United States v. Feliciano, 223 F.3d 102, 111 (2d Cir. 2000) (quoting Arizona v. Fulminante, 499 U.S. 279, 307-10 (1991)).  "Errors are properly categorized as structural only if they so fundamentally undermine the fairness or the validity of the trial that they require

21

voiding its result regardless of identifiable prejudice."
Yarborough v. Keane, 101 F.3d 894, 897 (2d Cir. 1996).

Courts have recognized a limited number of structural errors, all involving the violation of bedrock constitutional rights, such as total deprivation of the right to counsel, see Gideon v. Wainwright, 372 U.S. 335 (1963); United States v. Triumph Capital Grp., Inc., 487 F.3d 124, 131 (2d Cir. 2007); exclusion of jurors on the basis of race, see Vasquez v. Hillery, 474 U.S. 254 (1986); Tankleff v. Senkowski, 135 F.3d 235, 240 (2d Cir. 1998); and improper closure of a courtroom to the public, see Waller v. Georgia, 467 U.S. 39 (1984); United States v. Gupta, 699 F.3d 682, 688 (2d Cir. 2012).

The category of recognized structural errors with regard to jury instructions is even more limited. Thus, as a general proposition, "harmless-error analysis applies to instructional errors so long as the error at issue does not categorically 'vitiate all the jury's findings.'" Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (quoting Neder v. United States, 527 U.S. 1, 11 (1999) (alteration omitted) (emphasis in original)).

The instructional error here does not cross that threshold, nor does it implicate the overall fundamental fairness of Moran-Toala's otherwise well-tried case. In the

22

event of inconsistent verdicts, to the extent they occurred in this case, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal [on Count One] or the conviction [on Count Two] the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Powell, 469 U.S. at 64-65 (internal quotation marks omitted). An instruction permitting inconsistent verdicts calls into doubt only one of the jury's verdicts -- which one we cannot say -- but not both. Because the supplemental instruction did not infect all of the jury's findings, we employ harmless error review. Cf. United States v. Bunchan, 626 F.3d 29, 33-34 & n.2 (1st Cir. 2010) (reviewing for plain error defendant's unpreserved challenge to instruction that jurors "don't have to follow my instructions anymore . . . . [W]e close the door, and we can't tell whether or not you're doing what we ask you to do," and declining to reach the question of structural error).

2. Harmless Error. Since the error in the charge was not structural, we are required to review it for harmlessness. "We review a district court's jury instructions de novo, reversing only where appellant can show that, viewing the charge as a whole, there was a prejudicial error." Carr, 424 F.3d at 218 (citations and

23

internal quotation marks omitted). "An erroneous instruction, unless harmless, requires a new trial." <u>Id.</u> (internal quotation marks omitted). Instructional error is harmless only if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." <u>Neder</u>, 527 U.S. at 18.

Harmless error review in this case is complicated by the factual, if not legal, inconsistency in the jury's verdicts. The very reason such verdicts are unreviewable in and of themselves is because we could do no more than "try to guess which of the inconsistent verdicts is the one the jury really meant." <u>Acosta</u>, 17 F.3d at 545 (internal quotation marks omitted). We might speculate as to what the jury actually had in mind in order to seek to reconcile the two verdicts: perhaps the jury found that Moran-Toala had insufficient knowledge of the narcotics conspiracy to support a conviction on Count One, in which case a properly instructed jury likely would have also rejected the felony enhancement. Or the jury might have found that Moran-Toala's intent to further the narcotics conspiracy by misusing her CBP computer also proved her membership in the narcotics conspiracy, but it did not wish to convict on such a serious charge without evidence that she personally imported or sold drugs; in that case, a properly instructed

24

jury likely would have applied the felony enhancement.  The problem with either speculation, though, beyond the fact that they <u>are</u> speculations, is that they do not account for the jury's query: "Count 2: must the verdict in #4 be in agreement with Count #1?"  This note strongly suggests that the jury itself could not reconcile the verdicts on the two counts and was seeking (and obtained) permission to render its contemplated verdicts despite the inconsistency.

There is thus no serious doubt that the erroneous instruction contributed to any inconsistency in the verdicts inasmuch as it explicitly permitted them.[5]  We are not unaware of the fact that the district court's instruction ultimately resulted in a highly favorable verdict for Moran-Toala, who was convicted of the less serious charge and acquitted of the more serious one.  But, in light of the dearth of evidence of Moran-Toala's knowledge of the Espinal-Polanco airport conspiracy, it is nevertheless possible that a jury would have acquitted her of the narcotics conspiracy and declined to apply the felony enhancement had the supplemental instruction been correct

_____

[5]  Of course, the jury instruction also permitted the jury to return a verdict convicting Moran-Toala on the narcotics conspiracy charge, but declining to elevate the unlawful computer access conspiracy conviction from a misdemeanor to a felony.  That the jury chose otherwise is to Moran-Taola's substantial benefit.

and informed the jury that inconsistent verdicts are impermissible. We therefore cannot say with any confidence that it is clear beyond a reasonable doubt that a properly instructed jury would have convicted Moran-Toala of felony-level unlawful computer access conspiracy. Accordingly, the conviction on Count Two must be vacated and the case remanded to the district court for retrial, should the government be inclined to pursue the charge.

**II.  Rule 404(b) Evidence**

Although unnecessary to the disposition of this appeal, we nevertheless address the question of the propriety of the district court's admission of Moran-Toala's Florida plea allocution under Rule 404(b). We do so in light of the fact that the issue has been fully briefed and argued, and for the benefit of the district court should the unlawful computer access conspiracy charge be retried on remand.

Rule 404(b)(1) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Prior crime evidence may, however, be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge,

26

identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  This Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402."  United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011) (citation omitted).

We review the district court's evidentiary ruling for abuse of discretion.  United States v. McCallum, 584 F.3d 471, 474 (2d Cir. 2009).  Factors relevant to our review include whether: "(1) the prior crimes evidence was 'offered for a proper purpose'; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction."  Id. at 475 (quoting Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

It is undisputed that the Florida plea allocution was offered to show Moran-Toala's knowledge that her TECS searches furthered the JFK Airport narcotics conspiracy -- both a proper purpose under the Rule and a highly disputed issue at trial.  Instead, Moran-Toala objects that no jury could neutrally determine that she conducted inappropriate

27

TECS searches, but not in furtherance of a narcotics conspiracy, once it found out that she had done just that in another narcotics conspiracy in Florida.

The Florida plea allocution was both highly probative of Moran-Toala's knowledge of the New York conspiracy and highly prejudicial, as the Florida conviction is nearly identical to the New York charges. The court recognized both the probative value of the proffered evidence and the real problem of prejudice. The district court initially reserved judgment on the government's Rule 404(b) motion, waiting first to review the other evidence that was introduced at trial. It was only after weighing the probative value of the plea allocution, by noting that the issue of Moran-Toala's knowledge was "very much at play," and limiting its prejudicial effect, by pruning the government's proffered evidence to a focused and brief stipulation, that the court allowed the government to inform the jury about the Florida conviction. This reflects the proper balancing process required under Rule 403, with the district court engaging in a serious effort to minimize the prejudicial effect of the Florida conviction on the jury. Cf. id. at 477 (district court abused its discretion in admitting evidence of prior conviction under Rule 404(b) without conducting any Rule 403 balancing at all). "Only

rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." United States v. Awadallah, 436 F.3d 125, 134 (2d Cir. 2006) (internal quotation marks omitted). This not such an extraordinary case, and we find no abuse of discretion in the district court's evidentiary ruling.

**CONCLUSION**

The judgment of conviction is vacated, and the case is remanded to the district court for further proceedings.