16-547-(L)
USA v. Jackson (David C. Jackson)

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand nineteen.

Present:     AMALYA L. KEARSE,
             JOHN M. WALKER, JR.,
             DEBRA ANN LIVINGSTON,
                  *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

            *Appellee*,

       v.                                                      16-547-cr
                                                               16-999-cr
DAVID C. JACKSON, a/k/a C. David Manns, a/k/a
Charles Jackson, a/k/a Andrew D. Smithson;
ALEX HURT, a/k/a Alex Dante

            *Defendants-Appellants*.

_____

For Defendant-Appellant David Jackson:  RANDALL D. UNGER, Bayside, New York

For Defendant-Appellant Alex Hurt:      JONATHAN J. EINHORN, New Haven, Connecticut

For Appellee:                           MICHAEL S. MCGARRY, Assistant United States Attorney (Anthony E. Kaplan and Marc H. Silverman, Assistant United States Attorneys, *on the brief*), *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, Connecticut

Appeals from judgments of the United States District Court for the District of Connecticut (Arterton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

David Jackson and Alex Hurt appeal from their judgments of conviction entered on February 24, 2016, and April 1, 2016, respectively, after a jury trial. Jackson and Hurt also challenge their sentences. Both were found guilty of one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Jackson was found guilty of nine counts of wire fraud and Hurt was found guilty of three counts in violation of 18 U.S.C. § 1343. Hurt was also convicted of one count of making a false statement in violation of 18 U.S.C. § 1001. Jackson and Hurt's fraud involved inducing people to pay them fees and to place money in escrow in order to obtain loans. The loans never materialized, and the vast majority of the monies were never refunded to the victims of the fraud. On appeal, Jackson and Hurt challenge certain pre- and post-trial rulings, evidentiary rulings, and their sentences. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

## I. Severance

Federal Rule of Criminal Procedure 14(a) provides: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." When defendants have been properly joined, however, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right

2

of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "When the risk of prejudice is high," a separate trial may be necessary, but "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* "[A] trial court's denial of a severance motion under Rule 14 will be reversed for abuse of discretion only when a defendant can show such severe prejudice that his conviction may be said to be a miscarriage of justice." *United States v. Feyrer*, 333 F.3d 110, 115 (2d Cir. 2003).

Both Jackson and Hurt argue on appeal that the district court abused its discretion in denying a severance. We disagree. While Jackson and Hurt's defenses were somewhat antagonistic, that antagonism did not rise to the level required for severance: Hurt attempted to shift the blame to Jackson, but Jackson's defense was not mutually exclusive with Hurt's accusations. *See United States v. Cardascia*, 951 F.2d 474, 485 (2d Cir. 1991). And while the evidence against Jackson may have been more substantial than that offered against Hurt, such "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (quoting *United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir. 1983)). Moreover, much of the evidence would have been introduced against both defendants even if tried separately, *see United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999), and the district court's limiting instruction was sufficient, in any event, to address any prejudice. *See Spinelli*, 352 F.3d at 55 & n.3; *United States v. Yousef*, 327 F.3d 56, 151–52 (2d Cir. 2003). Because "the sheer volume and magnitude of evidence against one defendant" did not "dwarf[] the proof presented against his co-defendant," and because the district court provided an appropriate instruction, the district court did not abuse its discretion in denying the motion to sever. *Spinelli*, 352 F.3d at 55.

## II.    Substitution of Counsel

Jackson next contends that his motion to substitute counsel was improperly denied.    In assessing such motion, we consider four factors: (1) the timeliness of defendant's motion; (2) the adequacy of the trial court's inquiry; (3) "whether the conflict between the defendant and his attorney was so great that it resulted in a 'total lack of communication preventing an adequate defense'"; and (4) "whether the defendant substantially and unjustifiably contributed to the breakdown in communication."    *United States v. John Doe No. 1*, 272 F.3d 116, 122–23 (2d Cir. 2001) (quoting *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001)).    "We review a district court's denial of a motion to substitute counsel for abuse of discretion."    *United States v. Hsu*, 669 F.3d 112, 122 (2d Cir. 2012).

Even assuming Jackson's motion was timely, "application of the remaining three factors demonstrates that there was no abuse of discretion."    *John Doe*, 272 F.3d at 123.    The trial court thoroughly inquired into the basis of Jackson's complaint.    The information elicited through that inquiry—specifically, Jackson's perpetually shifting reasons for his dissatisfaction with counsel, counsel's assertion that Jackson had never furnished him with the names of many potential witnesses, the 32 letters counsel had written to Jackson while preparing for the trial, and counsel's promise to investigate the additional potential witnesses identified by Jackson—provided the district court with ample basis to conclude that no conflict or breakdown in the attorney-client relationship had occurred.    Accordingly, the district court did not abuse its discretion in denying Jackson's motion.

## III. Rule 404(b)

Jackson also challenges the admission at trial of evidence regarding his prior conviction for bank fraud. Federal Rule of Evidence 404(b)(2) allows the admission of prior crimes for specific purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." We employ the "inclusionary approach" when considering prior act evidence, meaning that such evidence "is admissible if offered 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (quoting *United States v. Mejia*, 545 F.3d 179, 206 (2d Cir. 2008)). Evidentiary rulings are reviewed for an abuse of discretion, and specific factors guide the review of evidence admitted under Rule 404(b). *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013). Specifically, "[f]actors relevant to our review include whether: '(1) the prior crimes evidence was "offered for a proper purpose"; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction.'" *Id.* (quoting *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009)); *see also Huddleston v. United States*, 485 U.S. 681, 691–92 (1988). Applying these factors here, we discern no abuse of discretion in the district court's decision to admit the challenged evidence.

The evidence was plainly admissible to show knowledge or intent. Jackson argued at trial that he blundered into the fraudulent transactions at issue because they were overly complex and he did not understand them. His prior conviction for inflating appraisal values to fraudulently secure bank loans was thus relevant to show that he was familiar with loan structuring and other transactions. *See United States v. Zedner*, 401 F.3d 36, 49–50 (2d Cir. 2005) (holding that evidence of previously fraudulently transferring deeds was relevant to charges of counterfeiting

bonds to the extent it proved the defendant's "financial sophistication, his ability to execute complex schemes, and his ability to form intent to defraud"), *rev'd on other grounds by Zedner v. United States*, 547 U.S. 489 (2006). Jackson also argues that the testimony of his probation officer, which was of limited probative value, was unfairly prejudicial. We disagree. Putting aside the fact that Jackson failed to object to the officer's testimony, the officer's testimony focused on, *inter alia*, Jackson's travel and travel expenses while on probation. This, coupled with Jackson failing to disclose his sources of income to his probation officer, served as direct evidence that he earned money through fraud and used those proceeds to pay for his travel. Finally, if there was any potential for prejudice, the district court carefully directed the jury that it could consider the prior conviction "in determining whether [Jackson] acted knowingly and intentionally . . . and not because of mistake, accident, or some other reason," that it could "not consider the fact of Mr. Jackson's prior conviction . . . as evidence that he has bad character or has a propensity to commit crime," and could "not consider the evidence of Mr. Jackson's prior conviction to conclude that because he previously committed bank fraud, he must have also committed the acts charged in the Indictment." Tr. 2385; G.A. 100.[1] Such an instruction limited the risk of unfair prejudice. *United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011). Accordingly, the district court did not abuse its discretion in admitting the evidence of Jackson's prior conviction.

## IV. Materiality of False Statement

A statement is material for purposes of 18 U.S.C. § 1001 "if it has a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical

---

[1] "Tr." refers to the trial transcript, which is available on the district court docket. "G.A." refers to the government's appendix.

6

matter." *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012) (internal quotation marks, brackets, and citations omitted).    However, as we have previously stated, whether the investigator "knew that the statements were false when they were made is irrelevant to their materiality." *United States v. Foxworth*, 334 F. App'x 363, 366 (2d Cir. 2009); *see also Brogan v. United States*, 522 U.S. 398, 402 (1998) ("[M]aking the existence of this crime turn upon the credulousness of the federal investigator (or the persuasiveness of the liar) would be exceedingly strange.").    Hurt argues that his false statement regarding his attendance at a meeting in North Carolina was not material because the federal agents interviewing him knew his answer was false.    Such knowledge, however, did not render the statement immaterial under our precedent.    Hurt's argument to the contrary is without merit.

## V.    Leadership Enhancement

The U.S. Sentencing Guidelines ("Guidelines") provide for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."    U.S.S.G. § 3B1.1(a).    Where a district court errs in its Guidelines calculation, it commits procedural error and a remand is necessary.    *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).    "We review the district court's interpretations of the Sentencing Guidelines *de novo* and its related findings of fact for clear error." *United States v. Lebedev*, 932 F.3d 40, 56 (2d Cir. 2019) (quotation marks and citation omitted). Here, Jackson argues that the district court erred in concluding that the four-level leadership enhancement applied to him.    For the following reasons, we disagree.

The evidence at trial provided ample support for the district court's conclusion that at least two of the escrow agents or brokers were a part of Jackson and Hurt's scheme.    These individuals recruited victims, relayed information they knew was false or had no reason to believe was true,

7

received and transferred money at Jackson and Hurt's direction, and threw up roadblocks to prevent victims from recouping their losses after they had been defrauded. Such conduct rendered the escrow agents and brokers "participants" for purposes of the § 3B1.1 enhancement. *See United States v. Norman*, 776 F.3d 67, 82–83 (2d Cir. 2015). Accordingly, the district court did not err in finding that at least two of the four escrow agents and brokers named at sentencing were "participants" in the criminal scheme and, therefore, that the scheme included at least five participants, including Jackson, Hurt, and Robinson-Cowan, the cooperating witness.

## VI. Minor-Role Reduction

Hurt next argues that the district court erred in declining to afford him a decrease in his offense level under the Guidelines for minor participation in the fraudulent schemes. The Guidelines allow for a decrease of offense level "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). A minor-role reduction is appropriate where "a defendant . . . plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." *Id.* cmt. 3(A). We discern no error in the district court's conclusion that Hurt was ineligible for such a reduction.

Compared to the other individuals involved in the scheme, Hurt's role was not minor. He met with numerous potential victims and encouraged them to do business with himself and Jackson. Hurt directly benefited from many of these transactions, receiving hundreds of thousands of dollars in fraudulently obtained escrow deposits and fees. This is substantially more than anyone else involved in the scheme, except Jackson. In other words, while Hurt was a lesser participant than Jackson, his role was not minor when compared to that of the other co-conspirator or the participating brokers and escrow agents. Given Hurt's knowledge of and participation in

8

the scheme, in addition to the profits he reaped, the district court did not err in concluding that Hurt was not a minor participant.

## VII.    Restitution

The Mandatory Victims Restitution Act ("MVRA") requires courts to order "restitution to the victim[s]" of certain crimes, including wire fraud. 18 U.S.C. § 3663A(a)(1). "Victim" includes any individual "directly and proximately" harmed by the offense. *Id.* § 3663A(a)(2). When an individual joins a conspiracy after its inception, he is responsible only for losses caused after he joins. *See United States v. Bengis*, 783 F.3d 407, 413–14 (2d Cir. 2015). Restitution orders are reviewed for abuse of discretion. *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013).

Hurt contends that the $2.255 million he was ordered to pay exceeds the amount he is responsible for under the MVRA because it includes losses caused solely by Jackson. Hurt's earliest involvement can be traced to April 2010 and his meeting with Broward Shipyard. All other victims to whom Hurt owes restitution were defrauded after Broward Shipyard, and Hurt does not argue that he was uninvolved in the fraud perpetrated against any specific victim. Accordingly, the restitution order imposed by the district court was not an abuse of discretion.

\*      \*      \*

We have considered Jackson and Hurt's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9