24-2714-cr
*United States of America v. Adames-Ramos*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of October, two thousand twenty-five.

Present:
> GUIDO CALABRESI,
> ROBERT D. SACK,
> EUNICE C. LEE,
>> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.

YDENIS ADAMES-RAMOS,

> *Defendant-Appellant.*

No. 24-2714-cr

---

| | |
|---|---|
| For Appellee: | JOSHUA K. HANDELL, Attorney (Matthew R. Galeotti, Supervisory Official, *on the brief*), *for* the United States Department of Justice, Washington, DC; (Rajit Singh Dosanjh and Thomas R. Sutcliffe, Assistant United States Attorneys, *for* John A. Sarcone III, United |

States Attorney for the Northern District of New York, Syracuse, NY, *on the brief*).

For Defendant-Appellant:                                JAMES P. EGAN, Assistant Federal Public Defender, Syracuse, NY.

Appeal from an October 3, 2024 judgment of the United States District Court for the Northern District of New York (Nardacci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Ydenis Adames-Ramos appeals from a jury conviction on one count of transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i), for which he was sentenced to time-served followed by one year of supervised release. On appeal, Adames-Ramos argues that the district court improperly instructed the jury on the necessary mens rea for conviction by defining "reckless disregard" in a manner that permitted the jury to convict him without finding that he was subjectively aware of the risk that the individuals he transported were noncitizens present in the United States unlawfully.

## BACKGROUND

On March 11, 2023, Ydenis Adames-Ramos left his home in Brooklyn at 3:00 in the morning and drove hundreds of miles through a snowstorm to a pre-determined meeting place near the Canadian border, where he picked up three people who were cold and shaking. Shortly thereafter, Customs and Border Patrol ("CBP") officers pulled Adames-Ramos over and determined that his three passengers did not have lawful status.

Upon being interviewed by CBP, Adames-Ramos explained that the day before, his brother called him and said that someone he knew was looking for a driver to pick up the three passengers

2

in upstate New York and bring them to New York City in exchange for $2,000. Adames-Ramos explained to the CBP officer that he agreed to do it but that this was the only time he or his brother had participated in an arrangement like this. While Adames-Ramos admitted to the officer that he thought something was "maybe" "not right" with the offer to pick up three people for $2,000, he also clarified that the person who arranged the trip told him that it did not involve "any of that drug stuff or-or anything illegal." App'x at 454–55.

Toward the end of the interview, Adames-Ramos admitted that he had not been truthful. He explained that, two months ago, his brother had in fact tried to make the same trip that Adames-Ramos just made, but that CBP "caught him." App'x at 467–68. Because of this failed attempt, his brother did not want to make the trip again. Specifically, according to Adames-Ramos, his brother said "[i]f you want, you do it. Because I'm not going to risk it." App'x at 467. Adames-Ramos "decided to take a risk," and made the trip. *Id.*

Against this backdrop, a federal grand jury returned an indictment charging Adames-Ramos with transporting aliens for private financial gain. At the close of trial, the district court instructed the jury on the elements of the underlying crime, including the relevant mens rea. The court explained:

> [T]o prove defendant guilty of knowingly transporting an illegal alien within [the] United States, the government must establish . . . First, that [Defendant's passengers] were in the United States in violation of the law. Second, *that the defendant knew or acted in reckless disregard of that fact, the fact that the person who was an alien who had come to, entered or remained in the United States in violation of the law.* Third, that defendant transported the alien within the United States. Fourth, that the defendant acted willfully in furtherance of the alien's violation of the law. And fifth, that the defendant acted for the purpose of commercial advantage or private financial gain.

3

App'x at 377 (emphasis added). With respect to the second element, the district court explained that "reckless disregard of the facts means deliberate indifference to facts that if considered and weighed in a reasonable manner indicate the highest probability that the alleged aliens were in fact aliens and were in the United States unlawfully." App'x at 378.

Adames-Ramos objected to this instruction, instead requesting the following instruction on the second element, which the district court declined to give: "The defendant acted with reckless disregard if the defendant knew of facts which, if considered and weighed in a reasonable manner, indicate a substantial and unjustifiable risk that the alleged alien was in fact an alien and was in the United States unlawfully, *and the defendant subjectively knew of that risk*." App'x at 36 (emphasis added). Adames-Ramos renewed this challenge in a post-verdict motion for acquittal, in part on the grounds that the government did not show that he had the requisite knowledge to be convicted.

## STANDARD OF REVIEW

We review challenged jury instructions *de novo*. *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014). "A jury instruction is erroneous if it either fails adequately to inform the jury of the law or misleads the jury as to the correct legal standard." *United States v. George*, 779 F.3d 113, 117 (2d Cir. 2015). In making this assessment, we review challenged instructions "in context to determine whether considered as a whole, the instructions adequately communicated the essential ideas to the jury." *Id.* (internal quotation marks omitted). "The defendant bears the burden of showing that the requested instruction accurately represented the law in every respect

and that, viewing as a whole the charge actually given, he was prejudiced." *United States v. Rutigliano*, 790 F.3d 389, 401 (2d Cir. 2015).

## DISCUSSION

Adames-Ramos argues that the district court incorrectly instructed the jury on the meaning of "reckless disregard." Specifically, Adames-Ramos relies on the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (2011), and the Ninth Circuit's decision in *United States v. Rodriguez*, 880 F.3d 1151 (9th Cir. 2018), to argue that a finding of reckless disregard requires that the defendant had *subjective awareness* of an unjustified risk that the transported individuals were unlawfully present in the country, as opposed to only knowledge of facts that, *if considered*, could give rise to a risk that the individuals he transported were in the country unlawfully. And because the district court's definition of "reckless disregard" in its instructions did not require the jury to find that Adames-Ramos was subjectively aware of a risk that the alleged aliens were in fact aliens and were in the United States unlawfully, App'x at 378, Adames-Ramos argues that the instruction was erroneous, *see* Appellant's Br. at 8–9.

Even if we were to find the challenged instruction erroneous, however, that alone would not compel reversal. If this Court is "convinced that the error did not influence the jury's verdict," the "error is deemed harmless." *LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*, 173 F.3d 454, 462 (2d Cir. 1999). "Instructional error is harmless . . . if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *United States v. Moran-Toala*, 726 F.3d 334, 344 (2d Cir. 2013) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). The government bears the burden of showing that an error was harmless. *See United States v. Olano*, 507 U.S. 725, 734–35 (1993).

5

Based on the evidence presented at trial, a rational jury would have convicted Adames-Ramos, even accepting his claim that the jury should have been instructed that the second element required it to find that he either knew or was subjectively aware of "a substantial and unjustifiable risk that" his passengers were "in fact [] alien[s] and [were] in the United States unlawfully." App'x at 36. The trial evidence demonstrated that Adames-Ramos drove through the night to a remote dead-end road near the Canadian border to pick up three passengers. He was to be paid a large fee ($2,000) for the trip by someone he had never met, and without receiving any money in advance. Adames-Ramos knew that the person who arranged the trip had previously hired his brother to perform the same ill-fated trip. Moreover, Adames-Ramos knew his brother had been "caught" by CBP and, as a result, did not want to take the trip again. App'x at 467. But Adames-Ramos was willing to "take a risk." *Id.* He also admitted that he thought that something was "maybe" "not right" with the arrangement in the first place. App'x at 454–55. And when Adames-Ramos arrived to pick up the passengers at the pre-determined location, he noticed that they were cold, wet, and shaking. The evidence also demonstrated that Adames-Ramos admittedly lied to the CBP investigators during his initial interview, and other trial evidence further revealed that he lied about the extent of his communications with the individual who arranged the trip.

Taken together, this evidence demonstrates beyond a reasonable doubt that Adames-Ramos either knew, or recklessly disregarded a known, substantial risk that his passengers were noncitizens who had come to the United States unlawfully. Thus, even if there were any error in the jury instructions taken as a whole, "it is 'clear beyond a reasonable doubt that a rational jury

6

would have found the defendant guilty absent the error.'" *Moran-Toala*, 726 F.3d at 344 (quoting *Neder*, 527 U.S. at 18).

*             *             *

For the reasons set forth above, we conclude that even if district court's reckless disregard instruction was erroneous, that error was harmless. We have considered Adames-Ramos's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court